IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MICHAEL MERRITT KOSTENKO,

          Petitioner,

v.                            CIVIL ACTION NO.  5:19-cv-00574
                              (Criminal No. 5:16-cr-00221)

UNITED STATES OF AMERICA,

          Respondent.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Petitioner's August 6, 2019 Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Document 177), brought on the grounds, *inter alia*, that his attorneys were ineffective and his guilty plea involuntary.

By *Standing Order* (Document 179) entered on August 7, 2019, this action was referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.  On that same date, the reference was transferred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge.  On August 4, 2021, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (Document 202) wherein it is recommended that this Court deny the Petitioner's § 2555 motion.  Objections to the Magistrate Judge's *Proposed Findings and Recommendation* were due by August 23, 2021.  The Court granted a motion to extend the deadline, and the Petitioner timely filed the *Pro Se Movant's Objections to the Proposed Findings and Recommendation of the Honorable Omar J. Aboulhosn, United States Magistrate Judge*

1

(Document 206) and a *Rule 7 Motion to Expand Record* (Document 207) with further arguments and attachments in support of his position. For the reasons stated herein, the Court finds that the objections should be overruled.

### FACTUAL AND PROCEDURAL BACKGROUND

Magistrate Judge Aboulhosn's PF&R sets forth in detail the procedural and factual history surrounding the Petitioner's motion. The Court now incorporates by reference those facts and procedural history, but in order to provide context for the ruling herein, the Court provides the following summary.

The Petitioner, Michael Kostenko, a doctor of osteopathic medicine (D.O.), was indicted on November 29, 2016, on charges related to his distribution of controlled substances in his capacity as a physician. A superseding indictment was returned on March 22, 2017.[1] The superseding indictment charged him with maintaining a drug-involved premises, 19 counts of distribution of oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice, and two counts of distribution of oxycodone resulting in death.

Mr. Kostenko operated the Coal Country Clinic, located within his residence in Raleigh County, West Virginia, and the charges arose from that medical practice. He operated a pain management practice in which he offered classes or lectures to groups of patients, then provided each patient with a prescription for oxycodone in exchange for a cash payment. Other than a basic exam on entering his practice, patients rarely received individual examinations or treatment, and

---

[1] On March 13, 2017, Mr. Kostenko appeared for a plea hearing pursuant to an agreement in which he would plead to a single count of distribution of oxycodone in an Information case, 5:17-cr-37, in exchange for dismissal of the original indictment. During the course of the hearing, he changed his mind and entered a plea of not guilty.

2

Mr. Kostenko did not consult with his patients' other physicians to monitor for drug interactions. He continued to prescribe to patients with clear indicators of addiction. He had approximately 800 to 1000 patients at a time, and prescribed oxycodone to nearly all of them.

Ward Morgan, an experienced CJA panel attorney, was appointed to represent Mr. Kostenko. On December 15, 2016, at Mr. Morgan's request, Magistrate Judge Aboulhosn appointed Derrick Lefler, another experienced CJA panel attorney, as co-counsel, given the complexity of the case and volume of discovery. Trial was scheduled to begin April 24, 2017. After approximately a day and a half of trial, on April 25, 2017, Mr. Kostenko entered a plea of guilty to a single count of distributing oxycodone not for legitimate medical purposes in the usual course of professional medical practice, in violation of 21 U.S.C. §841(a)(1). On August 23, 2017, the Court imposed a sentence of 240 months of incarceration, to be followed by five years of supervised release, and a $50,000 fine. That sentence represented the statutory maximum for the offense of conviction, and therefore the applicable Guideline range. The Court calculated a total offense level of 42 and criminal history category of 1, which would have corresponded to a Guideline range of 360 months to life absent the statutory maximum.

Mr. Kostenko expressed some disagreement with his counsel during his plea hearing, but ultimately acknowledged receiving sufficient legal advice and satisfactory representation. He stated that he had changed his mind and wished to plead guilty because he believed he would be convicted at trial and affirmed that his plea was his own voluntary decision, free of any pressure or coercion. Mr. Ward and Mr. Lefler filed a motion seeking to withdraw as counsel on June 1, 2017, stating that Mr. Kostenko wished to pursue issues calling their performance into question and citing a breakdown in communications. The Court denied the motion, noting the extensive

discussion regarding Mr. Kostenko's concerns regarding his counsel and his decision to plead guilty during his plea hearing. For similar reasons, the Court denied another motion submitted directly by Mr. Kostenko. His attorneys continued to provide effective representation, submitting objections to the Presentence Investigation Report and presenting sentencing arguments.

Mr. Kostenko filed an appeal, asserting that his plea was involuntary because he pled guilty only because he believed his attorneys were providing ineffective representation at trial. The Fourth Circuit affirmed, finding that he had "not overcome the presumption that the statements he made during the Rule 11 hearing were truthful." (4th Cir. Op. at 3) (Document 173.)

## STANDARD OF REVIEW

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

**DISCUSSION**

In the instant § 2255 petition, Mr. Kostenko alleges the following grounds for relief: "(1) coercion of guilty plea, (2) court appointed counsel in conflict of interest of defense with defendant, (3) court appointed counsel failed to submit prosecution's case to meaningful adversarial test, (4) court appointed counsel failed to investigate, (5) court appointed counsel failed to raise pretrial claim of government's decision and process of prosecution being unlawful and unconstitutional, (6) counsel's ineffective post-conviction assistance to plea withdrawal and sentencing hearing, (7) actual innocence, and (8) miscarriage of justice." (PF&R at 3) (internal quotation marks omitted.)

The Magistrate Judge found that Grounds 1 and 2, relating to the voluntariness of Mr. Kostenko's guilty plea, lack merit based on his statements during the Rule 11 plea hearing and are procedurally barred as the same issues were raised in his direct appeal. The Magistrate Judge found that Ground 3, in which Mr. Kostenko alleged his attorneys failed to subject the Government's case to meaningful adversarial testing, lacks merit because the record reflects that concerns with his understanding of his ability to subpoena witnesses were addressed at his plea hearing, and additional concerns regarding potential strategies to counter the Government's case were waived by his plea of guilty. Ground 4, asserting failure to investigate, centers largely on his attorneys' failure to secure an expert witness. Judge Aboulhosn notes the statements from Mr. Kostenko's attorney explaining that they worked with Mr. Kostenko and his daughter, an attorney, in an effort to secure an expert witness. Through that effort, only one potential expert was willing to testify, and that expert's fee was well beyond the rate that could be approved for reimbursement. To the extent Mr. Kostenko also alleges that his attorneys were ineffective because they failed to

hire an investigator or subpoena witnesses, Judge Aboulhosn found that such strategic decisions are generally not subject to challenge, and that Mr. Kostenko failed to establish prejudice because he could not identify the potential favorable testimony that a specified witness or expert would have provided.

Judge Aboulhosn found Ground Five, asserting that the prosecution was unconstitutional and that he was targeted as a whistleblower, to be similarly without merit. He explained that the allegations were conclusory and lacked factual support. As to Ground Six, Judge Aboulhosn found that counsel had sought to withdraw, and the Court denied their request. He noted that Mr. Kostenko's attorneys indicated that he had not requested that they seek to withdraw his plea of guilty, and that they believed the plea to be in his best interest given the charges of distribution causing a death that carried a twenty year minimum sentence. Judge Aboulhosn explained that a claim of actual innocence has not been recognized as a freestanding ground for habeas release in non-capital cases, and would not be supported in this case even if it were cognizable because it is based only on defenses available to Mr. Kostenko at the time of his trial and guilty plea. Likewise, he found that the claim asserting a fundamental miscarriage of justice was not supported by evidence.

Mr. Kostenko objects to the findings in the PF&R. He argues that his direct appeal did not address his claims of ineffective assistance of counsel. He further objects to the conclusions in the PF&R regarding his claims that his attorneys were ineffective and/or conflicted, arguing that he was entitled to an evidentiary hearing. He contends that there is a reasonable probability that he would not have pled guilty had his attorneys secured an expert witness. He argues that Judge Aboulhosn did not adequately address his claim that his attorneys had a conflict of interest, citing

6

Mr. Morgan's statement that his research indicated that Mr. Kostenko's medical practice was not in conformity with prevailing standards of care. In Mr. Kostenko's view, this suggests that Mr. Morgan believed him to be guilty, and Mr. Morgan was required to bring this opinion to the Court's attention and seek to withdraw as counsel.

Mr. Kostenko further contends that the Magistrate Judge did not adequately address the meaning of his claims of actual innocence and prosecutorial abuses, reiterating his belief that he was prosecuted in retribution for his efforts to expose criminal activity by officials.[2] He argues that his attorneys were ineffective and/or conflicted because they did not pursue a strategy of seeking to demonstrate that the prosecution was brought in retribution for Mr. Kostenko's disagreement with the medical establishment in the state. He further objects to the Magistrate Judge's summary of the record of the case, arguing that he pled guilty to "not being 'popular enough to win,'" rather than to the offense of conviction. (Obj. at 40.) In addition, he contends that his attorneys should have sought to withdraw the guilty plea without his instruction when they realized that he pled only because he felt he was not popular enough to win at trial.

The Sixth Amendment of the United States Constitution establishes the right to counsel "because it envisions counsel's playing a role that is critical to the ability of the adversarial system

---

[2] Much of Mr. Kostenko's briefing is somewhat difficult to decipher, and the Court has accorded it liberal construction. His objection regarding the prosecutorial misconduct claims reads, in part: "Kostenko objects to R&R failure to address meaning of Ground 5 whereby competent counsel by showing of pretrial proof of prosecution as retributive and deliberately based on justified purpose to discredit Kostenko civil rights activity to exposure racketeering activity involving government officials to deprive persons of right of health, were by proof developed to Ground 7 and Ground 8 would justify Court ordering release of Kostenko without prosecution." (Obj. at 23.) He argues that officials in the medical and public health communities suppressed information related to pathological adaptation: "Reporting is of the substantial and specific danger of scheme to public health caused by concealment of toxic health hazards contaminating work and community environments and by denial of honest service of reliable diagnosis to principles of pathologic adaption by methods of examination, evaluations, prevention, and treatment denied by scheme causing preventable chronic disease, pain, suffering, addiction, and death leading to opportunity for fraudulent marketing of drugs for chronic conditions such as with chronic pain." (Obj. at 29–30.) The additional documents submitted at Docket Entry 208 contain more detailed discussion of the expansive conspiracy he believes existed in relation to his theories regarding toxic exposure and pathologic adaptation, and which he believes culminated in his prosecution.

to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The Supreme Court in *Strickland* established a two-part test for defendants seeking to reverse convictions based on claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential…Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

As to the prejudice prong, the Supreme Court explained that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a claim of ineffective assistance of counsel, for a defendant convicted by guilty plea, the Supreme Court held that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An evidentiary hearing is unnecessary "in the absence of extraordinary circumstances" when "allegations in a § 2255 motion…directly contradict the petitioner's sworn statements made

during a properly conducted Rule 11 colloquy" because "courts must be able to rely on the defendant's statements made under oath" during Rule 11 hearings. *United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir. 2005).

The Court finds that an evidentiary hearing is unnecessary, as there is no meaningful factual dispute and Mr. Kostenko had a thorough Rule 11 hearing to ensure the voluntariness of his plea. Mr. Kostenko has not presented evidence or allegations that would support a finding of ineffective assistance of counsel. His complaints about specific decisions by his attorneys have more to do with the evidence against him and the evidentiary rules than with matters his attorneys could control. His attorneys sought an expert witness, but the nature of his practice rendered it impossible to obtain expert testimony that his practice was within the standard of care.[3] Just as a defense attorney cannot create an alibi witness for a defendant who was present at the scene of a violent offense, Mr. Morgan and Mr. Lefler could not secure an expert to offer testimony counter to medical standards and the facts of the case. Defense attorneys cannot change the status of the evidence against a defendant.

Mr. Kostenko presents no factual allegations in support of the claim that his attorneys had a conflict of interest. Differing views on the best strategy in a case do not constitute a conflict of interest. The suggestion that Mr. Morgan was required to withdraw because he believed Mr. Kostenko to be guilty is not indicative of a conflict of interest or ineffective assistance. Defense attorneys provide representation to clients regardless of their guilt or innocence and providing

---

[3] Indeed, had a potential expert prepared a report suggesting that the standard of care permitted prescribing oxycodone without individual patient examinations, discussion of potential drug interactions, or addiction monitoring, such testimony would likely have been precluded under *Daubert*. It is not clear how far discussions with the doctor whose fees proved too high reached or what his testimony might have been. In the context of the undisputed evidence regarding the contours of Mr. Kostenko's practice, there is little chance that a defense expert could have offered admissible testimony that would have altered the analysis of whether a guilty plea was in Mr. Kostenko's best interests.

9

those clients with a frank assessment of the evidence and likely outcome of a trial is an important part of their role.

Judge Aboulhosn very thoroughly outlined the plea colloquy, and the Court incorporates his findings and analysis herein. Mr. Kostenko verified that he had received adequate legal advice, was entering his plea voluntarily, and set forth an adequate factual basis for his plea of guilty. Although he stated that he changed his mind about whether to plead because he believed he was not popular enough to win at trial, he also admitted to the elements of the offense of conviction on the record. Most defendants who plead guilty presumably do so in part because they believe they would likely be convicted at trial. Mr. Kostenko had the benefit of observing trial for two days before making that decision. Following full trial preparation and strong testimony by witnesses for the prosecution, his attorneys' ability to secure a plea agreement to a single count with no mandatory minimum—essentially the same offer Mr. Kostenko rejected several weeks prior to trial—provided him with a substantial benefit. His arguments seemingly ignore the reality that withdrawal of his guilty plea would have placed him in the same position from which he chose to plead guilty: facing a trial in which the United States had substantial evidence against him, with the potential to be convicted of more charges, including charges of distribution causing a death that carried a twenty year minimum sentence. Given that the Guideline range calculated at sentencing substantially exceeded the statutory maximum for the offense to which he pled guilty, his attorneys' advice that he accept the plea appears well founded.

Mr. Kostenko's remaining objections relate to his allegations of wrongdoing against a broad array of officials and corporations. The Court would not have permitted extensive trial time focusing on his grievances related to past disputes with medical boards and public health officials


on pathological adaptation, which have little relevance to whether he prescribed oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice. His attorneys' decision not to focus on such a line of defense was a sound strategic decision well within the presumption of reasonable professional assistance. "Failure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996). The arguments and evidence that Mr. Kostenko suggests would have led him to reject the plea offer and continue with trial were without merit. Therefore, his claim of ineffective assistance of counsel cannot satisfy either prong under *Strickland*, and his Section 2255 claim must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Proposed Findings and Recommendation* (Document 202) be **ADOPTED** and that the *Pro Se Movant's Objections to the Proposed Findings and Recommendation of the Honorable Omar J. Aboulhosn, United States Magistrate Judge* (Document 206) be **OVERRULED.** The Court **ORDERS** that the *Rule 7 Motion to Expand Record* (Document 207) be **GRANTED** to the extent the Petitioner seeks review of the additional argument and documents supplied therein. The Court further **ORDERS** that the Petitioner's *Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Document 177) be **DISMISSED** and that this matter be **REMOVED** from the Court's active docket.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing

that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER: February 11, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA