UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA

v.                                                        CRIMINAL ACTION NO. 5:16-cr-00221-1

MICHAEL KOSTENKO

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Michael Kostenko's Motion for Compassionate Release [ECF 223], filed May 14, 2025.

### I.

In April 2017, Mr. Kostenko entered a plea of guilty to a single count of distributing oxycodone not for legitimate medical purposes in the usual course of professional medical practice, in violation of 21 U.S.C. §841(a)(1), as charged in Count Seven of the Superseding Indictment returned against him. [ECF 209 at 2]. On August 23, 2017, Mr. Kostenko was sentenced to 240 months of incarceration, to be followed by five years of supervised release, and a $50,000 fine. [*Id.*].

Over three years prior to his conviction, Mr. Kostenko underwent surgery to replace his ascending aortae due to a Type A dissecting aneurism. [ECF 223 at 3]. In 2014, a neurological examination of Mr. Kostenko found he had partial denervation of his right arm and shoulder, with loss of sensation, pain, and partial paralysis. [*Id.*]. On February 20, 2020, while incarcerated, Mr. Kostenko was evaluated by cardiothoracic doctors at Duke Medical in North Carolina. [*Id.*]. Those doctors recommended that Mr. Kostenko receive a staged surgery for reconstruction of his aortic

arch, followed by a thoracic endovascular aortic repair ("TEVAR"). [*Id.*]. Due to a risk of paralysis, stroke, loss of cognitive function, and death during or following surgery, Mr. Kostenko deferred surgery at that time. [*Id.*]. In May 2021, Mr. Kostenko received a second cardiothoracic consultation, which affirmed the findings of Duke Medical. [*Id.*]. According to Mr. Kostenko, that consulting surgeon was "unwilling to perform surgery for risk of paralysis and death." [*Id.*].

Mr. Kostenko now moves for compassionate release from incarceration. He contends that the Bureau of Prisons ("BOP") "cannot provide for needed Medical Care [sic]" and that release would "[permit] relationship with surgeon to replace aortic arch should [Mr.] Kostenko choose, and [permit] access to medically necessary intervention and self-care . . . not available through BOP Medical, to lessen chance of complication and death." [*Id.* at 6]. Mr. Kostenko's daughter has written to the Court requesting that her father be released into her care "so that [she] may take him back to Cleveland Clinic to get his 2nd heart surgery performed." [ECF 223-2]. She asserts that Mr. Kostenko "will not get the medical attention he needs if he is not released into [her] care." [*Id.*].

## II.

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the BOP. The Act "removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions." *United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the

BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To grant an inmate's motion for compassionate release or sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The Act "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 500 (2022); *see United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (holding that when analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting [its] analysis.").

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments, which, *inter alia*, identify the following six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction: (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) whether the defendant was a victim of abuse while incarcerated, (5) an unusually long sentence, and (6) any other circumstances or combination of circumstances similar in gravity to the aforementioned reasons. U.S. Sent'g Guidelines Manual §1B1.13(b)(1)-(6) (U.S. Sent'g Comm'n 2024). The medical circumstances of the defendant may comprise extraordinary and compelling reasons for compassionate release if the defendant is (1) suffering from "a serious physical or medical condition" or "a serious functional or cognitive impairment", or (2) "experiencing deteriorating physical or mental health because of the aging process," provided that the defendant's condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to

recover." *Id.* at §1B1.13(b)(1)(B). Likewise, if the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," he may qualify for compassionate release. *Id.* at §1B1.13(b)(1)(C).

If an inmate demonstrates extraordinary and compelling reasons for release, the Court must then consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce the inmate's sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021). These factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see High*, 997 F.3d at 187.

## III.

As discussed, Mr. Kostenko seeks compassionate release due his medical conditions, namely, an aortic arch and certain co-morbidities.

In 2013, Mr. Kostenko underwent surgical treatment for an aortic aneurism. Since that time, he has allegedly suffered from (1) nerve damage to his "right upper extremity with pain, sensitivity to touch, and partial paralysis," and (2) "[e]pisodic Mal-Profusion [sic] symptoms with 'brain fog[,]' fatigue, and loss of vision." [ECF 223 at 3]. He received a surgical consultation for these issues in 2020 -- while he was incarcerated -- at which the consulting physicians recommended he undergo an additional surgery for a "total [aortic] arch reconstruction" and a thoracic endovascular aortic repair ("TEVAR"). [*Id.*]. Despite the "urgent" need for surgery, Mr.

Kostenko deferred surgery due to a "high risk of stroke, paralysis, loss of cognitive function . . . and death during or following surgery." [*Id.*].

In 2021, Mr. Kostenko received a second consultation, which affirmed the assessment from the prior consultation. [*Id.*]. However, that consulting surgeon was reportedly unwilling to perform the surgery due to associated risks. [*Id.*]. In August 2022, a CT angiogram, likewise, confirmed the presence of his aortic arch. [*Id.* at 4]. Since that time, Mr. Kostenko has "declined further medical consultations" due to the "stress of transport," which he claims causes an "increase in brim mal-perfusion [sic] symptoms, blindness and 'brain fog[,]' and seizure[-]like activity." [*Id.*].

Mr. Kostenko now submits to the Court a proposed medical plan outlining his preferred course of treatment, which he claims will improve his vascular health, decrease his risk of stroke, rupture and death, and mitigate or improve his cognitive loss and episodic blindness. *See* [ECF 224]. Notably, although that plan reflects that Mr. Kostenko intends to schedule surgical consultations for his aortic arch, he continues to indicate a desire to avoid additional surgeries due to the associated risks. Instead, Mr. Kostenko seeks various non-surgical treatment options, including labs, imaging, injections, medications, vitamins, supplements, identification and reduction of stressors, and changes to his diet, to styme the symptoms of his condition. [*Id.* at 3–8]. He claims that the "[e]valuation, intervention, and self[-]management modalities to principle of pathologic adaptation as described by [his] Medical Care Plan are not available through BOP medical," and thus, compassionate release is warranted. [ECF 223 at 3].

After a thorough review of the record in this case, it is apparent that many of Mr. Kostenko's ailments were present at the time he was initially sentenced. *See* [ECF 116 at ¶¶ 3, 18 (discussing Mr. Kostenko's "serious medical conditions"); ECF 169 at 59 (outlining the Court's

findings at sentencing regarding Mr. Kostenko's health issues, including noting that "[h]e requires prescription medications and states that he needs a special diet, vitamins and herbs")]. The Court took these health concerns into account when imposing Mr. Kostenko's sentence, as evinced by its order that Mr. Kostenko be evaluated by the BOP and placed in a facility capable of treating his medical needs. [ECF 169 at 85]. Mr. Kostenko's medical history since sentencing, consisting of various consultations and recommendations for treatment, demonstrate that the BOP is capable of providing the care he *needs*, regardless of whether it is the care he *prefers*.

Mr. Kostenko's medical records support this finding, to the extent that such records are available. Clinical notes from August 2023 indicate there had been "no significant interval change" from the exam completed the previous year. [ECF 224-1 at 25]. According to clinical notes from November 2023, Mr. Kostenko's medical plan includes annual CT imaging of his chest, abdomen, and pelvis, as well as continuation of blood pressure medications. However, because Mr. Kostenko has refused transport for additional medical consultations since 2022 and provides no post-2023 medical records, it is unclear to the Court whether and to what extent his heart condition may have since deteriorated. Without more, the Court cannot ascertain whether further medical intervention is warranted beyond that already recommended, let alone whether the BOP's inability to provide that care supports a finding of extraordinary and compelling circumstances warranting release.

## IV.

Accordingly, Mr. Kostenko's Motion for Compassionate Release [**ECF 223**] is **DENIED WITHOUT PREJUDICE**. Mr. Kostenko may offer additional justifications or new evidence supporting his request.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to the

Defendant and counsel of record, to the United States Attorney, to the United States Probation

Office, and to the Office of the United States Marshal.

ENTER:        July 14, 2025

Frank W. Volk
Chief United States District Judge